SHAW *versus* EMERY.

The wife, as such, has no authority to put her husband's name to a contract.

But where a promissory note, against the defendant, was canceled and given up to his wife, for which she gave another similar note, changing the word *order* to *bearer*, and signed the defendant's name thereto, which doings of the wife, the defendant subsequently ratified ; such note is sufficient to establish a *prima facie* case in an action by the party lawfully holding it.

ON EXCEPTIONS from *Nisi Prius*, HATHAWAY, J., presiding.

ASSUMPSIT, upon a note of the following tenor:—

"St. Albans, 9th October, 1846.

"For value received I promise to pay Charles B. Ellis or bearer thirty dollars, in one year from date, with interest.

"Attest, Amasa B. Lothrop." "Seth Emery."

The plaintiff introduced the subscribing witness, by whose testimony it appeared, that one William H. Snell came into the defendant's house, who was then absent, and asked his wife to substitute the word "bearer" for "order" in a note, which he then presented, against her husband, as he wished to dispose of it and the payee lived some miles off. Mrs. Emery finally gave the note in suit, and he witnessed it. The old one was left with Mrs. Emery.

He also introduced said Snell, after being released by the plaintiff, by whom it appeared, that he was the general agent of the payee of the note, that he witnessed the first note given by Emery; that it was of the same tenor of the note in suit, excepting that the word "bearer" was substituted for the word "order;" that he was authorized to dispose of it by Ellis, and wished Mrs. Emery to make the change. She made this note and signed her husband's name and he gave up to her the old one. On the same day he sold and transferred this note in suit to the plaintiff, for a full consideration, which was authorized by Ellis. Some week or ten days after this he met the defendant and told him what he had done. Mr. Emery asked for what reason Mr. Shaw wanted "bearer" inserted instead of "order," and he told him because Mr. Ellis was not there to negotiate it. Emery said, "it was all right, he should have done it if he had been at home."

On this evidence, the presiding Judge, on motion of the defendant, ordered a nonsuit, to which the plaintiff excepted.

*Peters*, for plaintiff.

The Court probably ordered the nonsuit upon the strength of the case *Wood* v. *Goodridge*, 6 Cush. 117. That case

does not apply to this in the point decided, in the principle it discusses, nor in the reasons given in the opinion of the Court.

The point pressed into this case was in that a mere *dictum.* of Judge FLETCHER, it being sometimes a weakness of new Judges, to discuss points which do not relate to the decision of the case.

In that case, no power was given; in this, the power was given, or what was the same thing, was subsequently acknowledged. The ratification extends to every thing that was done. Whatever was done by defendant's wife, was rightfully done, because the defendant knowing it, has agreed to it.

That was in relation to an instrument under seal; this is a simple contract. This distinction is recognized in 5 Wheat. 326; *Haven* v. *Hobbs,* 1 Ver. 238; *Moore* v. *Green,* 13 N. H. 32.

A person may execute a deed or other instrument by the "hand of another person." *Frost* v. *Deering,* 21 Maine, 156; and the same is shown by a review of authorities in 11 Pick. 400.

There can be no question about ratification here. It was ratified by keeping the old note, by acknowledgment, and by contract; and a new assent is sufficiently proved by any conversation which is evidence of the fact. It applies to cases of this kind. *Skinner* v. *Dayton,* 19 Johns. 513; *Cady* v. *Shepherd,* 11 Pick. 400; *Bryan* v. *Moore,* 26 Maine, 84; Minot's Digest, p. 22, title "Ratification and Adoption."

*D. D. Stewart,* for defendant.

1. The note on its face purports to have been signed by the defendant personally. In fact, it was written by another person. Such a note is void. The agency of the person making the contract must appear upon the face of the contract, or its execution is a nullity. This question has recently been before the Supreme Court of Massachusetts, and their decision is directly against the validity of such a note.

*Wood* v. *Goodridge & al.*, 6 Cush. 117; Story on Promissory Notes, § 11.

The plaintiff attempts to escape the force of this decision on the ground of a subsequent ratification in this case. According to all the authorities *a subsequent ratification* is equivalent *simply* to a *previous authority.* Neither more nor less. Story on Agency, p. 297, note, (§ 251 and note.)

The difficulty is, that the mode of execution is void, *ipso facto*, and being void, no ratification can make the mode of execution valid. The note in suit not only purports to have been signed by the defendant *personally*, but even has an *attesting witness* to it. Nothing could be better calculated to deceive the public. No ratification could make such *attestation* true, or the mode of executing the note valid.

2. It is denied, that the defendant ratified the making of the note. The language should show a distinct and unambiguous promise to pay the note. *McLellan* v. *Crofton*, 6 Greenl. 348.

3. It may deserve consideration whether the note would not be void under the statute of frauds. R. S., c. 136, § 4.

4. There is another and decisive objection against the maintenance of this action. The note was made without the defendant's knowledge, and on the same day sold to the plaintiff. At the time of the sale there is no pretence it was valid against the defendant, it was then merely void, and no ratification has since been made to the plaintiff or to any person authorized by the plaintiff to act for him.

This difficulty is insuperable; it goes to the very essence of the action which is professedly upon contract, and a contract requires the assent of two minds, there must be mutuality or there can be no contract, and there can be no mutuality except between the actual parties to the contract or their lawfully authorized agents. Now whether the old note was payable to Ellis alone, or to his order, is immaterial, for nothing can be clearer than that this plaintiff Shaw cannot maintain any action upon it, it never having been negotiated. Nor is any such claim made in the present suit; but

this suit is brought by the plaintiff upon an alleged contract which clearly had no existence or validity against the defendant at the time when the plaintiff became possessed of the note now in suit. It has acquired no validity since, unless by the agreement of the defendant. And that agreement must have been made with the plaintiff, he having ever since remained the holder of the note.

" An original promise must be made to the party, or some one authorized to receive it." Per PARKER, C. J., in *Whitney* v. *Bigelow*, 4 Pick. 113.

This doctrine is as old as the law of contracts. It is of the very essence of the contract. S. P. in *Stewart* v. *Kennet*, 2 Campbell, 177; *Mountstephen* v. *Brook*, 2 Barn. & Ald. 141; S. P. in *Stanton & al.* v. *Blossom & al.*, 14 Mass. 116, 120; Story on Agency, § 247.

CUTTING, J. — The plaintiff introduced in evidence a note purporting to have been signed by the defendant, and made payable to one Charles B. Ellis or bearer. And called William H. Snell, who testified, *that* in October, 1846, as the general agent of Ellis, he went to the defendant's house, in his absence, and presented to his wife a note of a similar date and tenor, with the exception of the word " order", instead of " bearer"; *that* he called for the purpose of procuring the latter word to be substituted by the defendant for the former, for certain reasons then disclosed; *that* the wife declined to make that alteration, but did then sign her husband's name to the note in suit and delivered it to the witness, who surrendered to her the original note; *that* in a week or ten days afterwards, he met the defendant and informed him " what he had done," who replied " it was all right, he should have done it, if he had been at home," and *that* the note in suit was duly transferred to the plaintiff. Upon this evidence the Judge presiding ordered a nonsuit, to which the plaintiff excepts.

The evidence wholly fails to establish any authority in the wife to place her husband's signature to the note, either

with or without the sanction of her own as his agent. And this admission exhausts the authorities cited by defendant's counsel, on that point.

But it further appears, that the original note had been canceled and delivered up to the wife, and the presumption is, that it had gone into the possession of the husband and constituted a valid consideration for the renewal; that the defendant, with a knowledge of the facts, ratified and confirmed the whole proceedings, and thereby established a *prima facie* case for the plaintiff. *Bryant* v. *Moore*, 26 Maine, 84. *Exceptions sustained —*

*and nonsuit to be taken off.*

SHEPLEY, C. J., and TENNEY and HOWARD, J. J., concurred.